**Affirmed in Part; Reversed and Remanded in Part; and Majority Opinion and Concurring and Dissenting Opinion filed January 31, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00691-CV

## IN THE INTEREST OF L.N.C & K.N.M., CHILDREN

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-03776J**

## M A J O R I T Y   O P I N I O N

This appeal arises from the termination of the parental rights of D.D.C. ("Father") to his daughter, L.N.C. ("Laura"). [1] The parental rights of Laura's mother ("Mother") to Laura and her brother, K.N.M. ("Kevin"), and the parental rights of Kevin's father, K.J.M. ("James"), also were terminated. Mother and James are not parties to this appeal.

---

[1] We use pseudonyms to refer to the parties involved. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

Father was incarcerated at the time of trial on June 19, 2018. On appeal, Father challenges the judgment terminating his parental rights to Laura in four issues: (1) he was denied due process of law by the trial court's denial of his request for a continuance, when he was timely bench-warranted to appear at trial; (2) the evidence was factually insufficient to support the predicate finding under Tex. Fam. Code § 161.001(b)(1)(E); (3) the evidence was legally and factually insufficient to support the predicate finding under subsection Tex. Fam. Code § 161.001(b)(1)(N); and (4) the evidence was legally and factually insufficient to support the finding that termination was in Laura's best interest under Tex. Fam. Code § 161.001(b)(2). For reasons stated below, we conclude Father's due process rights were violated, reverse the trial court's judgment, and remand for a new trial. Because a finding of legal insufficiency would result in greater relief, we must first address Father's claims of legal insufficiency. *See In Interest of J.E.M.M,* 532 S.W.3d 874, 891–92 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (rendering judgment denying the Department's request to terminate Mother's parental rights to her children); *see also In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (holding rendition of judgment in favor of parent generally required if there is legally insufficient evidence).

Because Father does not claim the evidence is legally insufficient as to endangerment, he would not be afforded greater relief by a determination that there is no evidence of constructive abandonment. *See* Tex. Fam. Code §§ 161.001(b)(1)(E) and (N), respectively. We therefore do not reach the merits of issues two or three.

We do, however, consider that part of Father's fourth issue contending there is legally insufficient evidence to support the best-interest finding because a determination in Father's favor would afford greater relief. *See* Tex. Fam. Code § 161.001(b)(2).

# I. BEST INTEREST

Termination must be in the child's best interest. Tex. Fam. Code § 161.001(b)(2). There is a strong presumption that the best interest of a child is served by keeping the child with the child's parent. *Id.* § 153.131(b); *see also In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam); *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The Department of Family and Protective Services (the "Department") carries the burden of rebutting that presumption. *U.P.*, 105 S.W.3d at 230. Prompt, permanent placement of the child in a safe environment is also presumed to be in the child's best interest. *See* Tex. Fam. Code § 263.307(a). Proof of acts or omissions under section 161.001(b)(1) are probative of the issue of the child's best interest. *See In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

## A. *Burden of Proof and Standard of Review*

Only one predicate finding under Tex. Fam. Code § 161.001(b)(1), along with the best-interest determination, is necessary to support termination. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In a termination case, the State seeks not just the limitation of parental rights, but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between a parent and child, except the child's right to inherit. Tex. Fam. Code § 161.206(b); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *E.R.*, 385 S.W.3d at 554–55; *Holick*, 685 S.W.2d at 20–21.

Parental rights can be terminated if clear and convincing evidence shows (1) the parent committed an act described in Tex. Fam. Code § 161.001(b)(1), and (2) termination is in the best interest of the child. Tex. Fam. Code § 161.001(b)(2). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code § 101.007. This heightened burden of proof results in heightened standards of review for sufficiency of the evidence.

When reviewing the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 266. We assume the fact finder resolved disputed facts in favor of its finding, if a reasonable fact finder could do so, and disregard all evidence a reasonable fact finder could disbelieve. *Id.*

The fact finder assesses the credibility and demeanor of the witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014); *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam). We may not second-guess the fact finder's resolution of a factual dispute by relying on disputed evidence or evidence the fact finder could easily have rejected as not credible. *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003).

B.    *Relevant Evidence*

Father claims the evidence is legally insufficient to support the trial court's finding that termination of his parental rights was in Laura's best interest. The Department responds that the best-interest finding is supported by the evidence.

Laura was four years old at the time of trial; Kevin was two and a half. The children came into care due to neglectful supervision by Mother and James. At that

4

time, Father was incarcerated for assaulting Mother when she was five and a half months pregnant. Pursuant to a plea bargain, Father pled guilty to second-degree assault and was sentenced to two years in prison in 2017. The Department's caseworker, Kirby Clark, testified Father would complete his sentence on January 6, 2019.

The Department introduced additional convictions into evidence. In 2016, Father was convicted of assault of a family member, a class A misdemeanor, and sentenced to twenty days in county jail. In 2012, Father was adjudicated guilty of third-degree possession of a prohibited weapon and sentenced to two years in prison. In 2010, Father was convicted of trespass and possession of marijuana, both class B misdemeanors and sentenced to thirty days and ten days, respectively, in county jail. In 2009, Father was convicted of evading arrest, a class B misdemeanor, and theft, a class A misdemeanor, and sentenced to sixty days in county jail in each case. In 2008, Father was convicted of assault, a class A misdemeanor, and sentenced to ninety days in county jail. In 2007, Father was convicted of unlawfully carrying a weapon, a class A misdemeanor, and criminal trespass, a class B misdemeanor, and sentenced to ten days in county jail in each case.

Clark agreed that Father's pattern of incarceration posed a danger to Laura. A family service plan ("FSP"), tailored to what Father could do in prison, was implemented. Pursuant to the FSP, Clark asked Father to contact Clark each month, inform her what services he was able to complete while incarcerated, provide the names of family members that he would like to have Laura placed with, sign a release of information, and maintain contact with Laura by mail. According to Clark, Father did all of these things. Clark agreed that Father had completed everything asked of him under the FSP. Although not requested, Father had acquired a general education diploma ("GED"). Clark agreed that Father showed a deep interest in

Laura, loves her, and has written her on numerous occasions, including on her birthday and at Christmas. Father has not sent any gifts or money for Laura's benefit. Clark acknowledged that Father was not the reason Laura came into care. Clark also testified that Father has not demonstrated any ability to parent Laura. She agreed that Father's incarceration was part of the reason the children came into care.

Clark stated that during this case Father communicated with Clark by letter, and requested Laura be placed with his parents. Clark agreed the paternal grandparents are available for support and are willing to provide a stable environment and financial assistance. While Father was in prison, his parents attended court hearings to support Laura. The paternal grandmother told Clark that they have a relationship with Laura and a bond with her. The paternal grandparents are willing and able to take Laura into their care and have a stable home environment. Their home study was approved. A criminal background check of the paternal grandparents was negative, and they have no history with the Department. Clark agreed that "everything has been approved" for Laura to be placed with the paternal grandparents.

Clark also testified that Kevin, James' son and Laura's half-brother, have been together since Kevin's birth and have a sibling bond. When Clark contacted the paternal grandmother, she only wanted Laura placed with her. Father has not provided an alternative relative for placement. According to Clark, a decision had to be made whether to separate Laura and Kevin when the paternal grandparents were approved. Clark testified it would be detrimental to separate Laura and Kevin because they were "really attached to each other." Clark testified Laura wants to stay with Kevin. Clark and the Child Advocate, Renee LeBas, agreed that the bond between Laura and Kevin was more significant and the children would be kept together.

6

The children were then placed in a foster home in February 2018. Clark testified the foster home was intended to be permanent. The children were bonded with the foster parents. The foster mother testified the children have been with her for four and a half months. Initially, Laura was a little aggressive. Laura has completed play therapy and now has speech therapy. The foster mother testified that she has not received any support through the Department from the parents. Clark testified to her belief that termination of the parental rights of all three parents was in the children's best interest.

After the children were placed in foster care, a relative of Kevin, K.M. ("Karen"), came forward. Karen is James' second cousin and lives in Delaware with her husband and a child of their own. Karen and her husband have gainful employment. Clark testified the Department was now considering Karen as a placement for the children. Karen's preliminary home study was approved. Karen had never met the children and had no prior relationship with them. Clark testified the Department wanted to wait until the home study was complete and her supervisor had reviewed it before making any recommendations. The Department also wanted to observe visitation between Karen and the children.

LeBas testified Laura and Kevin were well bonded and Laura takes care of Kevin. She recommended the children stay in their current placement during Karen's evaluation. LeBas agreed that Father's criminal history and current incarceration pose a concern and that he is a danger to the children. LeBas stated it was a concern that Father assaulted a pregnant woman. LeBas testified it was Child Advocate's position that parental rights be terminated and that termination was in the children's best interest.

C.    *Analysis*

The considerations the trier of fact may use to determine the best interest of the children, known as the *Holley* factors, include: the desires of the child; the present and future physical and emotional needs of the child; the present and future emotional and physical danger to the child; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and any excuse for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re U.P.*, 105 S.W.3d at 230; *see also* Tex. Fam. Code § 263.307(b) (listing factors to consider in evaluating parents' willingness and ability to provide the children with a safe environment). This list of factors is not exhaustive and a best-interest finding does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72. Evidence is not required on all the factors to support a finding that termination is in the child's best interest. *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). A trial court may infer that past endangering conduct may occur again in the future if the child is returned to the parent. *In re J.B.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

1.  Desires of the child.

Laura has articulated her wish to remain with her brother, Kevin. There is no evidence as to her desires regarding her parents. Testimony indicates that Laura has been well-cared for by her foster mother and bonded with her. The trial court was

8

entitled to find that this factor weighed in favor of terminating Father's parental rights.

2. Present and future physical and emotional needs of the child.

The record reflects that Laura had neither permanency nor security before coming into care. In the previous ten years, Father was convicted nine times. During Laura's lifetime, Father was twice incarcerated for family violence. The last offense was committed before Laura turned three. Accordingly, Father's acts resulted in his absence from Laura's life and his failure to provide for her physical and emotional needs. The trial court was entitled to find that this factor weighed in favor of terminating Father's parental rights.

3. Present and future emotional and physical danger to the child.

Father's domestic abuse of Laura's mother when she was two years old endangered Laura emotionally and presents a risk of physical danger. The trial court was entitled to find that this factor weighed in favor of terminating Father's parental rights.

4. Parental abilities of the person(s) seeking custody.

With the assistance of his parents, Father is able to provide a safe and secure home for Laura. Father completed his FSP plan and obtained a GED. The record is silent as to whether Father ever took care of Laura. However, Father twice committed domestic abuse before Laura was three years old and was imprisoned for both convictions. The trial court was entitled to find that this factor weighed in favor of terminating Father's parental rights.

5.  Available assistance programs.

The record reflects Father completed his FSP and acquired his GED while incarcerated. Accordingly, this factor weighed against terminating Father's parental rights.

6.  Plans for the child by those individuals or by the agency seeking custody.

Father requested Laura be placed with her paternal grandparents. However, the Department did not consider that placement a viable placement because separating Laura from Kevin would not be in her best interest. Yet the Department did not have a permanent plan for Laura at the time of trial. The foster placement, which was originally intended to be permanent, was in limbo while the Department considered whether both children should be placed with Karen. The trial court was entitled to find that this factor weighed neither for nor against terminating Father's parental rights.

7.  Stability of home or proposed placement.

Father's proposed placement of Laura with the paternal grandparents provided a stable and secure home. The home study of the paternal grandparents was approved and they have no criminal history or history with the Department. Although the foster home is stable, Laura has been there four months and the Department did not recommend she be placed there permanently. Accordingly, this factor weighed against terminating Father's parental rights.

8.  Acts or omissions of the parent.

Father has a ten-year criminal history. Although several of the offenses are misdemeanors, the two most recent charges of domestic abuse are evidence of endangerment to Laura. The trial court was entitled to find that this factor weighed in favor of terminating Father's parental rights.

10

9.  Any excuse for the acts or omissions of the parent.

Father did not appear at trial or participate by any other means. The record is therefore silent as to any excuse for his acts or omissions. The trial court was entitled to find that this factor weighed neither for nor against terminating Father's parental rights.

Applying the applicable *Holley* factors to the evidence, we conclude that legally sufficient evidence supports the trial court's finding that termination of Father's rights is in Laura's best interest. *See In re U.P.*, 105 S.W.3d at 230–32. We overrule Father's fourth issue, in part.

As noted above, it is unnecessary to address Father's claims of factual insufficiency as it would afford no greater relief. We now turn to Father's claim that his right to due process was violated.

## II.  DUE PROCESS

The record reflects a bench warrant was signed by the trial court on March 29, 2018, to deliver Father for trial on June 19, 2018, at 9:00 a.m. When trial commenced on June 19, Father's counsel orally requested a continuance, stating, "Judge, before we begin, I'd like to move for a continuance so my client has an opportunity to be here. I properly bench warrant [sic] him but for some reason, he wasn't able to be here today. I would like to give him the opportunity to be present at trial."[2] The trial court denied the continuance.[3] On appeal, Father claims he was not afforded the

___

[2] The record reflects that on July 5, 2018, the trial court directed Sheriff Ed Gonzales of Harris County to return Father to his unit of confinement.

[3] James' counsel also requested a continuance, stating he had been incarcerated and was released in April but counsel did not know his current whereabouts. That request also was denied. The record reflects that James appeared after the close of evidence and counsel asked to reopen "for the purposes of offering irrevocable affidavit of voluntary relinquishment of parental rights to the Department of Family and Protective services that my client has just signed." The trial court refused to accept the affidavit but offered for counsel to put on evidence. Counsel rested.

11

opportunity to participate at trial in a meaningful manner in violation of his right to due process under the United States Constitution and the Texas Constitution. *See* U.S. CONST. amend. XIV, § 1; TEX. CONST. art. I, § 19.[4]

We first address the Department's response questioning whether Father's oral motion, without supporting facts or argument, established his presence at trial was necessary to preserve his right to due process. Citing our decision in *In re T.D.N.*, No. 14-07-00387-CV, 2008 WL 2574055 (Tex. App.—Houston [14th Dist.] June 26, 2008, no pet.) (mem. op.), the Department points out that no written motion for continuance was filed in accordance with the requisites of Rule 251. *See* Tex. R. Civ. P. 251. For the reasons stated below, *T.D.N.* is distinguishable from the case at bar. 2008 WL 2574055, at *1.

Generally, a party complaining on appeal must have obtained an adverse ruling on the appellate complaint in the trial court or objected to any alleged refusal to rule. Tex. R. App. P. 33.1(a). In *T.D.N.*, the trial court did not rule on the movant's oral motions for continuance and no objection was made to the failure to rule. 2008 WL 2574055, at *1. We held the alleged error was not preserved. *Id.* Here, the record shows the trial court ruled on the oral motion. *See* Tex. R. App. P. 33.1(a).[5]

We also stated that because appellant did not comply with Rule 251, the trial court did not abuse its' discretion by failing to grant a continuance. *T.D.N.*, 2008 WL2574055, at *1. In support of that statement, we cited *In the Interest of B.S.W.*,

---

[4] For claims of procedural due process, as here, the Supreme Court of Texas has found no meaningful distinction between Texas' due-course-of-law protection and the federal constitution's due process guarantee. *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).

[5] Because we found the error was not preserved in accordance with Rule 33.1(a), it was not reversible regardless of whether the movant complied with Rule 251. *See USAA Texas Lloyds Co. v. Menchaca,* 545 S.W.3d 479, 505 (Tex. 2018).

No. 14-04-00496-CV, 2004 WL 2964015, at \*4 (Tex. App.—Houston [14th Dist.] Dec. 23, 2004, no pet.) (mem. op.), and *Ohlhausen v. Thompson*, 704 S.W.2d 434, 436-37 (Tex. App.—Houston [14th Dist.] 1986, no writ). In *B.S.W.*, 2004 WL 2964015, at \*4, we cited *Ohlhausen*, 704 S.W.2d at 436, along with *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986), and *In re E.L.T.*, 93 S.W.3d 372, 375 (Tex. App.—Houston [14th Dist.] 2002, no pet.), for the same proposition. But *Ohlhausen* stated, "[w]here the terms and provisions of Rule 251 have not been complied with, it will be *presumed* that the trial court had not abused its discretion in denying continuance." 704 S.W.2d at 436 (emphasis added). Likewise, in *E.L.T.*, we stated that "[i]f a motion for continuance is not made in writing and verified, it will be *presumed* that the trial court did not abuse its discretion in denying the motion." 93 S.W.3d at 375 (emphasis added) (citing *Ohlhausen*, 704 S.W.2d at 436). Thus, it is *presumed*, but not a foregone conclusion, that the trial court did not abuse its' discretion in denying a motion for continuance when a movant fails to comply with Rule 251. *Villegas*, 711 S.W.2d at 626 (emphasis added).

In this case, counsel indicated in her motion that she did not know why Father was not present since he had been properly bench warranted.[6] The children's attorney ad litem echoed counsel's lack of information when, after the close of evidence, he stated to the trial court: "Judge, I believe there is an issue with the outstanding -- with respect to his lack of presence here today. I believe it would be appropriate, as he was bench warranted here, to have -- allow him to be present. I'm not sure what happened with the bench warrant." Father could not appear at trial absent compliance with the bench warrant by the Harris County Sheriff's Office. Father's non-appearance was clearly unanticipated, and counsel did not have

---

[6] The fact that an order issued on July 5, 2018 to return Father to his unit of confinement reflects the bench warrant was partially carried out.

13

personal knowledge of the possible reason for Father's failure to appear. Given these facts, and the fundamental constitutional right at issue, we decline to apply the presumption that arises from failure to comply with Rule 251. *Cf. In re A.A.,* No. 05-07-01698-CV, 2008 WL 2514346, at *3 (Tex. App.—Dallas June 25, 2008, no pet.) (mem. op.) (deciding whether the failure to file a written motion for continuance supported by affidavit was ineffective assistance). We therefore will consider, on the merits, the question of whether the trial court abused its discretion by denying the continuance.

We first turn to the Department's argument that Father failed to meet his burden of showing sufficient cause because the motion was made without argument, or reference to any facts establishing Father's presence was necessary to preserve his constitutional rights, or that his interest in being present outweighed the impact on the correctional system of obtaining his presence. Thus, the Department contends Father failed to demonstrate the trial court abused its discretion by denying the continuance.

The Department's argument presumes that it is appropriate for this court to reconsider whether the bench warrant should have been granted. Trial courts consider a variety of factors when deciding whether to grant an inmate's request for a bench warrant. *In re Z.L.T.*, 124 S.W.3d 163, 166 (Tex. 2003). These factors include the cost and inconvenience of transporting the prisoner to the courtroom; the security risk the prisoner presents to the court and public; whether the prisoner's claims are substantial; whether the matter's resolution can reasonably be delayed until the prisoner's release; whether the prisoner can and will offer admissible, noncumulative testimony that cannot be effectively presented by deposition, telephone, or some other means; whether the prisoner's presence is important in judging his demeanor and credibility; whether the trial is to the court or a jury; and

14

the prisoner's probability of success on the merits. *Id.* Because a prisoner has no absolute right to be present in a civil action, the prisoner requesting a bench warrant must justify the need for his presence. *Id.*

The trial court presumably considered the above factors and determined Father had justified the need for his presence.[7] Accordingly, the cases relied upon by the Department are distinguishable from the case at bar. In both *In re Z.L.T.*, 124 S.W.3d at 166, and *In re C.P.V.Y.,* 315 S.W.3d 260, 269–70 (Tex. App.—Beaumont 2010, no pet.), the incarcerated father had not been granted a bench warrant. Because the trial court in this case granted a bench warrant, counsel had every reason to expect the Harris County Sheriff's Office to deliver Father to court for trial as ordered.[8]

We now proceed to consider whether Father's due process rights were violated by the trial court's denial of a continuance. In analyzing a claim of deprivation of procedural due process, we determine: (1) whether the complaining party has a liberty or property interest entitled to protection; and (2) if so, what process is due. *In re D.W.*, 498 S.W.3d 100, 112 (Tex. App.—Houston [1st Dist.] 2016, no pet.). (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982); *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995)). It is well-settled that in a proceeding to terminate parental rights a prison inmate has an interest that is entitled to protection. *In re D.W.*, 498 S.W.3d at 112, (citing *Hudson v. Palmer*, 468 U.S. 517, 523, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984); *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388,

---

[7] The fact that an order issued on July 5, 2018 to return Father to his unit of confinement reflects the bench warrant was partially carried out.

[8] Thus, there was no reason for counsel to seek Father's participation by other means, such as an affidavit or telephonic conference and we reject the Department's attempt to distinguish *In re D.W.*, 498 S.W.3d at 116, on that basis.

1394–95, 71 L.Ed.2d 599 (1982); *In re R.M.T.*, 352 S.W.3d 12, 17 (Tex. App.— Texarkana 2011, no pet.); *In re T.L.B.*, No. 07–07–0349–CV, 2008 WL 5245905, at *2 (Tex. App.—Amarillo Dec. 17, 2008, no pet.) (mem. op.); and *Martinez v. Tex. Dep't of Protective & Regulatory Servs.*, 116 S.W.3d 266, 271 (Tex. App.—El Paso 2003, pet. denied)). In such a proceeding, due process requires, at a minimum, notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)). We determine what process is due based upon the practical requirements of the circumstances. *Id.* (citing *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902). Three factors are weighed: (1) the private interest affected by the proceeding or official action; (2) the countervailing governmental interest supporting use of the challenged proceeding; and (3) the risk of an erroneous deprivation of the private interest due to the procedures used. *Id.* (citing *In re B.L.D.*, 113 S.W.3d 340, 352 (Tex. 2003); *Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903)); *see also City of Los Angeles v. David*, 538 U.S. 715, 717, 123 S.Ct. 1895, 1896, 155 L.Ed.2d 946 (2003).

The private interests of both the parent and the child in the accuracy and justice of the decision to permanently end their relationship, weighs heavily in favor of providing Father with an opportunity to participate in the proceedings and communicate with his attorney during trial. *See D.W.*, 498 S.W.3d at 113 (citing *In re M.S.*, 115 S.W.3d 534, 547–48 (Tex. 2003)). Accordingly, the first factor weighs in favor of finding that under the circumstances in this case, Father did not receive due process.

The Department's interest is to protect the best interest of the child and is best served by "an accurate determination" as to whether Father "can and will provide a normal home." *Id.* quoting *M.S.*, 115 S.W.3d at 548–49; *see also B.L.D.*, 113 S.W.3d at 353. Additionally, to avoid negative psychological effects on a child left "in

limbo," the Department has an interest in an accelerated timetable and final decision. *Id.; see also M.S.*, 115 S.W.3d at 54849; *B.L.D.*, 113 S.W.3d at 353. The expeditious determination of termination cases serves the child's strong interest in a final decision on termination so that adoption to a stable home or return to the parents is not unduly prolonged. *Id.; see also* Tex. Fam. Code § 263.401(a) (providing a deadline for parental termination suits). However, in this case the record does not reflect that granting the motion for continuance would have greatly harmed Laura's or the Department's interest.

Trial was held on June 19, 2018 and the anniversary of the date the petition was filed was not until July 17, 2018. The case was not at risk for dismissal.

Nor does the record show that granting the motion for continuance would have created a conflict between Laura's need for permanency and stability and Father's right to reasonable access to the court. At the time of trial, the Department had not decided upon a permanent placement for Laura.

The record also does not demonstrate Laura's best interest was promoted by denying the motion for continuance since Laura's placement at the time of trial was stable and satisfactory.

Given the novel facts here, that Father was bench warranted and in the sheriff's custody but not brought to court, the Department's interest in resolving the case in a single day cannot be given more weight than the interests of Laura and Father in a just and accurate result. *See M.S.*, 115 S.W.3d at 548; *see also In re T.L.B.*, No. 07–07–0349–CV, 2008 WL 5245905, at *3 (Tex. App.—Amarillo Dec. 17, 2008, no pet.) (mem. op.) ("[C]oncerns for efficiency and economy are inferior to the private interest at stake as well as the risk of an erroneous termination decision."). Therefore, the second factor also weighs in favor of finding that Father did not receive due process.

17

The Department suggests the risk of erroneously depriving Laura and Father of their parent-child relationship is not adequate to find the trial court abused its discretion because Father, through his counsel, had the opportunity to present evidence and cross examine witnesses. The right to cross examination is vital to a fair trial and it includes the right of rebuttal. *Id.* (citing *Richardson v. City of Pasadena*, 513 S.W.2d 1, 4 (Tex. 1974)). Father's absence at trial meant that his counsel was unable to communicate with him regarding strategy for cross-examining witnesses or rebutting the Department's evidence. *Id.* Accordingly, the third factor also weighs in favor of finding Father did not receive due process.

Considering all the above factors, we hold that Father was denied a meaningful opportunity to participate in the proceedings in violation of his right to procedural due process.

To obtain reversal of a judgment based on trial court error, an appellant must show that the error probably caused rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the appellate court. Tex. R. App. P. 44.1(a). All litigants forced to settle disputes through the judicial process have a constitutional right to be heard at a meaningful time in a meaningful manner. *Larson v. Giesenschlag*, 368 S.W.3d 792, 796–97 (Tex. App.—Austin 2012, no pet.). A prisoner's right of access "entails not so much his personal presence as his opportunity to present evidence or contradict the evidence of the opposing party." *Dodd v. Dodd,* 17 S.W.3d 714, 717 (Tex. App.—Houston [1st Dist.] 2000, no pet.), *disapproved on other grounds by In re Z.L.T.,* 124 S.W.3d 163, 166 (Tex. 2003). If the trial court determines that the inmate's personal appearance is not warranted, then the trial court should allow the inmate to proceed by affidavit, deposition, telephone, or other effective means. *In re R.C.R.*, 230 S.W.3d 423, 426 (Tex. App.—Fort Worth 2007, no pet.); *Boulden v. Boulden*, 133 S.W.3d 884, 886–

87 (Tex. App.—Dallas 2004, no pet.); *see also Parker v. Parker*, No. 14-16-00098-CV, 2017 WL 924529, at \*2 (Tex. App.—Houston [14th Dist.] Mar. 7, 2017, no pet.)

In determining whether the denial of procedural due process to Father was harmful error, this case varies from those cases where the alleged denial of an inmate's due process rights in a parental-termination proceeding is based upon the trial court's refusal to issue a bench warrant. Here, the trial court determined Father's personal appearance was necessary and issued a bench warrant. Thus, Father had no reason to seek participation by other means. When Father was not delivered to trial, the trial court refused the request for a continuance. The trial court did not allow Father to proceed by affidavit, deposition, telephone, or any other means. As a result, Father was foreclosed from presenting evidence to counter that offered by the Department. Thus, we hold that the denial of procedural due process in this case "probably prevented [Father] from properly presenting the case" on appeal. *See* Tex. R. App. P. 44.1(a)(2); *see also T.L.B.*, 2008 WL 5245905, at \*5 (holding, in termination-of-parental-rights case, that trial court's denial of father's meaningful participation in trial violated his due-process rights and probably prevented him from properly presenting case on appeal).

The underlying suit in this case was brought to terminate the parental rights of Father, an incarcerated individual. The method of allowing his meaningful participation at trial was secured by the request and granting of a bench warrant. When Father was not brought to trial in accordance with that warrant, he was precluded from meaningful participation in the trial that resulted in the termination of his parental rights. In this case, the denial of procedural due process probably prevented Father from properly presenting his case on appeal. Under these particular

circumstances, we conclude the trial court abused its' discretion by failing to grant the requested continuance. Father's first issue is sustained.

### III.    CONCLUSION

Having addressed every issue raised that it is necessary to final disposition of the appeal, we reverse the trial court's judgment terminating the parental rights of Father to Laura and remand that issue to the trial court for further proceedings. *See* Tex. R. App. P. 47.1. In all other respects, the judgment of the trial court is affirmed.


/s/    Margaret "Meg" Poissant
Justice


Panel consists of Justices Christopher, Hassan and Poissant. (Christopher, J., dissenting).