

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00648-CV

**IN THE INTEREST OF M.A.,** a Child

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-PA-00285
Honorable Peter A. Sakai, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:         Sandee Bryan Marion, Chief Justice
                 Patricia O. Alvarez, Justice
                 Beth Watkins, Justice

Delivered and Filed: February 26, 2020

AFFIRMED

Appellant K.H. appeals the trial court's order terminating her parental rights to her child, M.A.[1]  On appeal, she argues the trial court abused its discretion by depriving her of the opportunity to participate in the termination hearing.  She also challenges the sufficiency of the evidence supporting the predicate grounds for termination of her parental rights under sections 161.003 and 161.004 of the Texas Family Code ("the Code").  We affirm the trial court's order.

### BACKGROUND

In February of 2016, K.H. gave birth to M.A. while detained at the Bexar County Jail.  The Texas Department of Family & Protective Services ("the Department") sought to terminate K.H.'s parental rights at that time.  The trial court denied the Department's petition, instead appointing

---

[1] To protect the minor's identity, we refer to the parent and child using aliases. *See* TEX. R. APP. P. 9.8.

the Department M.A.'s permanent managing conservator and K.H. possessory conservator. The Department placed M.A. with a foster family, where she currently remains.

K.H. has been diagnosed with bipolar disorder, attention deficit hyperactivity disorder (ADHD), depression, epilepsy, and anxiety. She takes several different medications to treat her symptoms. In May of 2018, after she was released on parole, K.H. moved into a mental health facility in Austin that helped her apply for Medicaid assistance and administer her medication. While at the facility, K.H. was hospitalized multiple times at a psychiatric hospital. During this time, she did not maintain contact with the Department or have any contact with M.A.

In an attempt to engage K.H. in her service plan, Department Caseworker Alysha Kraft drove to Austin to take K.H. to receive a psychological evaluation in San Antonio. In addition to the psychological evaluation, the service plan required K.H. to engage in individual therapy; take anger management, domestic violence, and parenting classes; and determine where she planned to live and work. According to Kraft, the Austin facility provided many of these services and a stable environment for K.H. to be close to M.A. In July of 2018, Kraft attempted to schedule visits for K.H. to see M.A., but K.H. did not make herself available, and instead told Kraft she was moving to a mental health group home in Houston. K.H. did not provide Kraft with any additional information until three weeks after she moved.

While K.H. was in Houston, the Department assigned a local caseworker to the case, but continued to have difficulty communicating with K.H. Over the next few months, K.H. moved five times to different mental health group homes in Houston. Each of the homes provided K.H. with transportation and medication management assistance, but K.H. did not engage in her service plan and told Kraft she had problems with her medication. K.H. was also admitted to the psychiatric hospital multiple times while in Houston.

In August of 2018, the Department moved to modify the parent-child relationship and sought termination of K.H.'s parental rights to M.A. The Department argued K.H.'s parental rights should be terminated both under section 161.003 of the Code because K.H.'s mental illness rendered her unable to provide for M.A. now or in the future and under section 161.004 of the Code because there had been a material and substantial change in circumstances since the previous order denying termination.

In October of 2018, the trial court held a bench trial on the Department's petition, and K.H. appeared and had a seizure. The trial court rescheduled the trial for January 22, 2019, and K.H. returned to a group home in Houston. K.H. was hospitalized in December of 2018 after a suicide attempt, so the trial court rescheduled the trial to allow K.H. time to recover. K.H. was subsequently hospitalized two more times. In April of 2019, she was arrested. She was incarcerated in the Harris County Jail when the case was tried in August of 2019.

K.H. did not physically appear at the bench trial because, according to K.H.'s counsel, the Harris County Sheriff's Office would not release inmates to other counties. Instead, K.H. appeared by phone. The trial court heard testimony from K.H., Kraft, K.H.'s psychologist, the Houston caseworker assigned to K.H.'s case, and M.A.'s foster father. After hearing the evidence, the trial court signed an order terminating K.H.'s parental rights to M.A. under sections 161.003 and 161.004 of the Code. K.H. appeals.

## ANALYSIS

### *Opportunity to Participate in a Meaningful Manner*

K.H. argues the trial court abused its discretion by failing to allow her to physically appear at trial, depriving her of the opportunity to participate in a meaningful manner. According to K.H., she could not effectively contest the Department's allegations by phone.

*Standard of Review*

The termination of parental rights involves fundamental constitutional rights, and we strictly scrutinize proceedings that seek to terminate those rights. *In re R.F. III*, 423 S.W.3d 486, 492 (Tex. App.—San Antonio 2014, no pet.). This court has recognized an inmate's right to be present during such proceedings. *Id.* A litigant cannot be denied reasonable access to the courts simply because she is incarcerated. *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003); *In re R.F. III*, 423 S.W.3d at 492. However, inmates do not have an absolute right to appear in person at every court proceeding. *In re Z.L.T.*, 124 S.W.3d at 165; *In re R.F. III*, 423 S.W.3d at 492. A trial court abuses its discretion when its failure to act on an inmate's request for participation, in person or by other means, effectively bars the inmate from presenting her case. *In re R.F. III*, 423 S.W.3d at 492.

*Applicable Law*

An "inmate's right of access to the courts must be weighed against the protection of our correctional system's integrity." *In re Z.L.T.*, 124 S.W.3d at 165. A trial court considers several factors in determining this balance and deciding whether to grant an inmate's request to physically appear, including: (1) the cost and inconvenience of transporting the inmate to the courtroom; (2) the security risk and danger the inmate presents to the court and public; (3) whether the inmate's claims are substantial; (4) whether the matter's determination can reasonably be delayed until the inmate is released; (5) whether the inmate can and will offer admissible, noncumulative testimony that cannot be offered effectively by deposition, phone, or otherwise; (6) whether the inmate's presence is important in judging her demeanor and credibility; (7) whether the trial is to the court or to a jury; and (8) the inmate's probability of success on the merits. *Id.* at 165–66. A litigant inmate bears the burden to establish her right to relief. *Id.* at 166. If, after considering these factors, the trial court determines that the inmate is not entitled to appear personally, then the trial

court should permit her to proceed by affidavit, deposition, phone, or other effective means. *Larson v. Giesenschlag*, 368 S.W.3d 792, 797 (Tex. App.—Austin 2012, no pet.).

*Application*

Here, the trial court signed a bench warrant ordering "any sheriff" "to produce the body of [K.H.] for a civil trial on April 19, 2019 at 9:00 AM.," but the Harris County Sheriff's Office refused to honor it. The trial court then granted the Department's request for K.H. to participate at trial by phone. At the beginning of trial, K.H.'s counsel orally requested a continuance, stating she did not have any prior notice of the Department's request for K.H. to appear by phone. Counsel further argued K.H.'s physical presence was necessary because K.H.'s mental competency was at issue, and it was important for the trial court to see K.H.'s demeanor.

This case is unique in that the trial court granted K.H.'s request for a bench warrant to allow her to participate in person at trial. *But see In re Z.L.T.*, 124 S.W.3d at 166 (holding trial court did not abuse discretion when denying father's request for a bench warrant). Presumably, the trial court considered the above factors and determined K.H. had established her right to be present at trial. *See In re L.N.C.*, 573 S.W.3d 309, 322 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (presuming trial court determined father justified his presence at trial since trial court had granted bench warrant). It was only when the Harris County Sheriff's Office refused to execute the bench warrant that the trial court allowed K.H. to participate by phone. *See In re Z.L.T.*, 124 S.W.3d at 165–66; *Larson*, 368 S.W.3d at 797.

Moreover, this court has determined that "[a] party's participation at trial by phone can constitute meaningful participation." *In re I.L.*, 580 S.W.3d 227, 241 (Tex. App.—San Antonio 2019, pet. dism'd). Accordingly, because the trial court granted K.H. a bench warrant and, after the Harris County Sheriff's Office did not release K.H., allowed her to participate by phone, we

cannot conclude the trial court abused its discretion. *See id*.; *see also In re R.F. III*, 423 S.W.3d at 492. We therefore overrule K.H.'s first issue.

### *Sufficiency of the Evidence*

K.H. next challenges the sufficiency of the evidence supporting the predicate grounds for termination of her parental rights under sections 161.003 and 161.004 of the Code. K.H. contends the Department failed to establish by clear and convincing evidence that she suffers from a mental illness or deficiency that makes her unable to provide for M.A.'s needs now or in the future as required by section 161.003. She also contends the Department failed to show that a material and substantial change in circumstance occurred after the first trial or that she committed an act under section 161.001, as required by section 161.004.

### *Standard of Review*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001. "Clear and convincing evidence" is defined as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. Courts require this heightened standard of review because termination of a parent's rights to a child results in permanent and severe changes for both the parent and child, implicating due process concerns. *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014).

When reviewing the legal and factual sufficiency of the evidence, we apply well-established standards of review. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department produced clear and convincing evidence, a legal sufficiency review requires us to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005)

(quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" then the evidence is legally sufficient. *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

A factual sufficiency review requires us to also consider the disputed evidence. *In re J.F.C.*, 96 S.W.3d at 266. We must consider whether disputed evidence is such that a reasonable factfinder could have resolved that disputed evidence in favor of its finding. *Id.* If the disputed evidence is so significant that the fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.* Under both standards, the factfinder is the sole judge of the weight and credibility of the evidence. *In re E.X.G.*, No. 04-18-00659-CV, 2018 WL 6516057, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet denied) (mem. op.).

*Section 161.003*

Section 161.003(a) permits the termination of parental rights if the Department proves by clear and convincing evidence that:

(1) the parent has a mental or emotional illness or mental deficiency that renders the parent unable to provide for the physical, emotional, and mental needs of the child;

(2) the illness or deficiency, in all reasonable probability, proved by clear and convincing evidence, will continue to render the parent unable to provide for the child's needs until the 18th birthday of the child;

(3) the department has been the temporary or sole managing conservator of the child of the parent for at least six months preceding the date of the hearing on the termination. . . ;

(4) the department has made reasonable efforts to return the child to the parent; and

(5) the termination is in the best interest of the child.

TEX. FAM. CODE ANN. § 161.003(a). "A mental illness or deficiency of a parent is not, in and of itself, grounds for termination of the parent-child relationship." *In re B.J.C.*, 495 S.W.3d 29, 36 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Evidence must support a determination that a

parent's mental illness or deficiency prevents her from providing for her child now and in the future. *Id.*

*Application*

K.H. only challenges the sufficiency of the evidence on subsections (1) and (2), arguing that the Department failed to show how K.H.'s diagnoses rendered her unable to provide for M.A. now or in the future. For support, K.H. points to testimony from her psychologist, who testified she could not state whether K.H. could parent because K.H. had not been given the opportunity to parent. We disagree.

At trial, the Department produced evidence that K.H. was diagnosed with multiple mental illnesses—including bipolar disorder, ADHD, depression, and anxiety—that rendered her unable to provide and care for M.A. Kraft testified that when K.H. was released from prison, she failed to progress to a point where she could independently care for herself or meet the physical, emotional, and mental needs of M.A. *See In re B.J.C.*, 495 S.W.3d at 37–38 (holding evidence supported termination under section 161.003 when evidence showed mother failed to progress). Kraft testified that over the course of a year and a half, K.H. moved to six different group homes and was hospitalized multiple times at different in-patient psychiatric hospitals. Kraft testified K.H. failed to maintain contact with her and the Houston caseworker, and when she attempted to schedule visitations, K.H. did not express interest. *See In re C.L.*, No. 04-03-00638-CV, 2004 WL 86136, at *2 (Tex. App.—San Antonio 2004, no pet.) (mem. op.) (considering parent's failure to utilize services and comply with service plan in section 161.003 determination). Kraft testified she was concerned about whether K.H. could care for M.A. because K.H. expressed "very intense suicidal ideations" each time she talked to her. The evidence shows one of K.H.'s psychiatric hospitalizations occurred because K.H. tried to commit suicide. Kraft stated that K.H. recently told her she was struggling greatly and had trouble with her medication. Kraft further explained

K.H. needed constant monitoring and medication management because she could not consistently maintain her doctor appointments, which were required for her medication refills. *See In re B.J.C.*, 495 S.W.3d at 37–38 (holding evidence supported termination when evidence showed mother incapable of parenting without assistance).

In addition, K.H. testified her medications made her extremely tired and she could not predict when she would doze off. K.H. testified she could not take care of her own daily needs, including cooking, cleaning, or feeding herself, but added she could take a shower by herself. When asked specific questions regarding M.A.'s physical and emotional needs, K.H. testified that she understood that M.A. needed room to play and run so she could be healthy, but she did not know what M.A.'s emotional needs were at age three or would be in the future. K.H. also stated she did not know whether she could provide a home for M.A. and she did not take any parenting classes while at the mental health facilities or in prison.

The Department also produced evidence that M.A. has extensive medical needs. Kraft testified that when M.A. was one month old, she had a slide tracheoplasty, which requires daily monitoring and annual follow-ups with a pulmonologist and an ENT. K.H. testified M.A. has chronic lung disease, reactive airway disease, and seizures. K.H. testified she would not know how to care for M.A. if she had custody of her.

When the evidence establishes special, extensive medical needs of a child, Texas appellate courts affirm termination under section 161.003 even "[w]hen the evidence is less convincing of the parent's complete inability to parent." *In re A.L.M.*, 300 S.W.3d 914, 919 (Tex. App.—Texarkana 2009, no pet.) ("The needier the child, the more able the parent must be."). Here, when viewing the evidence in the light most favorable to the trial court's finding, we conclude that the trial court could have formed a firm belief or conviction that K.H.'s deficiencies render her unable

to meet M.A.'s special medical needs now or in the future. *See In re J.L.*, 163 S.W.3d at 85; *In re B.J.C.*, 495 S.W.3d at 37.

K.H. argues that despite this evidence, K.H.'s psychologist explained she could not testify that K.H. could never parent M.A. "because she's never had an opportunity to ever demonstrate her ability to parent. . . ." However, section 161.003 requires only that the Department produce evidence that the mental deficiency, *in all reasonable probability*, renders the parent unable to care for the child. TEX. FAM. CODE § 161.003(a) (emphasis added). "In all reasonable probability" does not require proof beyond a reasonable doubt or "scientific certainty." *In re A.M.C.*, No. 04-18-00219-CV, 2018 WL 3440686, at *2 (Tex. App.—San Antonio July 18, 2018, pet. denied) (mem. op.). Here, the psychologist testified she performed a psychological evaluation of K.H. and determined K.H. had problems with short-term memory and focusing due to ADHD. The psychologist further testified K.H. had difficulty expressing empathy, did not have a good understanding of normal child growth and development, and acted impulsively. She further added K.H. had a learning disability and expressed confusion when circumstances moved fast or became complicated. When asked about the permanency of K.H.'s deficiencies, the psychologist testified K.H.'s bipolar disorder was permanent, whereas her other disorders come and go. Having reviewed the record as a whole, we conclude the trial court could have reasonably formed a firm conviction that in all reasonable probability, K.H.'s mental deficiencies rendered her unable to care for M.A. now or in the future. *See In re J.L.*, 163 S.W.3d at 85; *In re B.J.C.*, 495 S.W.3d at 37. We therefore hold the evidence is legally and factually sufficient to support the trial court's findings under section 161.003.

Because we conclude the Department produced sufficient evidence to terminate K.H.'s rights under section 161.003, we do not address K.H.'s sufficiency challenge to the trial court's findings under section 161.004. *See In re A.M.C.*, 2018 WL 3440686, at *3 (holding no need to

address trial court's findings under another section supporting termination when evidence sufficiently supports termination under section 161.003); *see also* TEX. R. APP. P. 47.1; *In re F.M.E.A.F.*, 572 S.W.3d 716, 724 (Tex. App.—Houston [14th] 2019, no pet.) (describing section 161.004 as alternative method of termination).

## CONCLUSION

Based on the foregoing, we affirm the trial court's order of termination.

Beth Watkins, Justice