**Affirmed and Memorandum Opinion filed April 9, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00499-CV

---

### IN THE INTEREST OF A.A.D., A CHILD

---

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2022-00951J**

---

### MEMORANDUM OPINION

Appellant A.D. ("Mother") appeals the trial court's order terminating her parental rights to her son, A.A.D. In two issues, Mother argues (1) the trial court abused its discretion in denying Mother's oral motion for a continuance and this was a violation of her due process rights, and (2) the evidence is factually insufficient to support a finding that termination of her parental rights was in A.A.D.'s best interest. We affirm.

### I. BACKGROUND

On May 11, 2022, the Department of Family and Protective Services ("the

Department") received a referral alleging Mother's neglectful supervision of A.A.D. The referral alleged that Mother left A.A.D., a seven month old baby, with a friend and without a plan to provide for him; that the friend attempted to return A.A.D. to Mother but Mother did not respond; and that the friend then left A.A.D. on the porch of where Mother was sleeping, where he was left unattended for an unknown amount of time.

On June 6, 2022, the Department filed its petition for conservatorship of A.A.D. and for the termination of Mother's parental rights. The Department alleged that termination of Mother's parental rights was proper under multiple statutory bases. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (K), (N), (O).

On May 23, 2023, trial of the Department's petition began before the bench. Before trial commenced, Mother's counsel informed the trial court that counsel had just learned that Mother was incarcerated in the Harris County jail and asked for additional time so that Mother could be present. After a brief recess to try to get Mother to appear via Zoom, the trial court stated that it was unclear whether Mother would be able to participate via Zoom and proceeded with the trial.

The trial court received testimony from the Department's case worker, Velda Gibson ("Gibson"); A.D.D.'s child advocate, Javier Gonzales; and A.A.D.'s foster mother ("Foster Mother"). The trial court also admitted multiple exhibits into evidence, including the Department's removal affidavit, the family service plan for Mother, the guardian ad litem's report to the court, and evidence of Mother's criminal history.

The trial court found that termination of Mother's parental rights was proper under subsections (E) and (O) and in A.A.D.'s best interest. *See id.* § 161.001(b)(1)(E), (O), (b)(2). On June 13, 2023, the trial court signed a final decree terminating Mother's parental rights to A.A.D. and appointing the

2

Department as A.A.D.'s sole managing conservator.[1]

This appeal followed.

## II. PRESENCE AT TRIAL

In her first issue, Mother argues the trial court abused its discretion when it denied her the right to be present at the trial in violation of her due process rights.

On the day of trial, Mother's counsel told the court that she had just been informed of Mother's incarceration, and requested time to bring Mother from the jail so that Mother could be present for trial. After a brief recess to attempt to allow Mother to appear via Zoom, the trial court stated that it was unclear whether Mother would be able to participate via Zoom and proceeded with the trial.

It is well-established that litigants cannot be denied access to the courts simply because they are inmates. *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003); *see Hudson v. Palmer*, 468 U.S. 517, 523, (1984). However, an inmate does not have an absolute right to appear in person in every court proceeding. *In re Z.L.T.*, 124 S.W.3d at 165. Instead, the inmate's right of access to the courts must be weighed against the protection of our correctional system's integrity. *Id.*

Courts consider a variety of factors in assessing whether an inmate has satisfied this burden: the cost and inconvenience of transporting the inmate to the courtroom; the security risk the inmate presents to the court and public; whether the inmate's claims are substantial; whether the matter's resolution can reasonably be delayed until the inmate's release; whether the inmate can and will offer admissible, noncumulative testimony that cannot be effectively presented by deposition, telephone, or some other means; whether the inmate's presence is

---

[1] The trial court also terminated Father's parental rights to A.A.D. Father is not a party to this appeal.

3

important in judging his demeanor and credibility; whether the trial is to the court or a jury; and the inmate's probability of success on the merits. *Id.* at 165–66. It is the inmate's burden to justify the need for her presence. *Id.* at 166.

Mother did not introduce any evidence on these factors or otherwise satisfy her burden of justifying the need for her presence; therefore, we cannot conclude that the trial court abused its discretion when it proceeded to trial without her presence. *See id.* Furthermore, we note that Mother's counsel did not file a written motion for continuance, *see* Tex. R. Civ. P. 251, did not raise any due process objection at the trial court, or raise any objection to the commencement of trial without her presence. *See* Tex. R. App. P. 33.1(a); *see also In re B.L.D.*, 113 S.W.3d 340, 352 (Tex. 2003) ("[W]e have declined to review unpreserved complaints even when a parent's constitutional interests are implicated."); *In re L.N.C.*, 573 S.W.3d 309, 320–22 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (concluding that presumption that trial court did not abuse its discretion in denying oral motion for continuance was inapplicable where parent's attorney knew of parent's incarceration, obtained a bench warrant, and had no reason to anticipate parent's absence from trial given these facts).

We overrule Mother's first issue.[2]

### III. BEST INTEREST FINDING

In her second issue, Mother argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental

---

[2] After this case was submitted to the Court, we struck Mother's brief, abated the appeal, and remanded this case to the trial court to appoint new appellate counsel for Mother. We stated in our order that "[t]he effectiveness of trial counsel is one of the issues that must be researched and analyzed on appeal." *Sam v. Texas*, 467 S.W.3d 685, 688 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Newly appointed appellate counsel did not raise the issue of ineffective assistance of counsel in his brief.

4

rights was in A.A.D.'s best interest.

## A.    STANDARD OF REVIEW

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see Stantosky v. Kramer*, 455 U.S. 745, 753 (1982). "Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases." *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring). Accordingly, termination proceedings must be strictly scrutinized. *Id.* at 112. In such cases, due process requires application of the "clear and convincing" standard of proof. *Id.* (citing *Stantosky*, 455 U.S. at 769; *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)).

This intermediate standard of proof falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). "'Clear and convincing evidence' means a 'measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (quoting Tex. Fam. Code Ann. § 101.007); *see In re K.M.L.*, 443 S.W.3d at 112–13 ("In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true.").

In a legal sufficiency review, we view the evidence in a light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 266.

5

To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* This does not mean that a court must disregard all evidence that does not support the finding. *Id.* Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id.*

In a factual-sufficiency review, we must consider whether disputed evidence is such that a reasonable fact finder could not have resolved it in favor of the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true. *Id.*

**B.   APPLICABLE LAW**

The trial court may order the termination of the parent-child relationship if the court finds by clear and convincing evidence that: (1) the parent committed an act or omission described in Family Code § 161.001(b)(1) and (2) termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001(b)(1)–(2). Although prompt and permanent placement in a safe environment is presumed to be in a child's best interest, Tex. Fam. Code Ann. § 263.307(a), courts apply a strong presumption that the child's best interest is served by keeping the child with his natural parents; the burden is on the Department to rebut that presumption. *In re*

*L.C.L.*, 599 S.W.3d 79, 86–87 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (en banc); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

In determining the child's best interest, the factfinder may consider the *Holley* factors: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are non-exclusive and the best interest finding does not require proof of any unique set of factors. *See In re J.J.C.*, 302 S.W.3d 436, 447 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

Stability and permanence are paramount in the upbringing of children. *In re J.D.*, 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The factfinder must weigh the parent's abilities to meet the child's needs and any programs available to help her do so. *In re M.A.A.*, No. 01-20-00709-CV, 2021 WL 1134308, at *36 (Tex. App.—Houston [1st Dist.] Mar. 25, 2021, no pet.) (mem. op.). Further, a parent's neglect of her child's medical or dental needs endangers the child, *In re J.H.*, No. 01-22-00629-CV, 2023 WL 2169952, at *14 (Tex. App.—Houston [1st Dist.] Feb. 23, 2023, pet. denied) (mem. op.); *see, e.g., In re E.A.D.*, No. 14-22-00025-CV, 2022 WL 2663981, at *5 (Tex. App.—Houston [14th Dist.] July 11, 2022, no pet.) (mem. op.), as well as a parent's

failure to properly supervise her young child. *See In re M.C.*, 917 S.W.2d 268, 269–70 (Tex. 1996) (per curiam).

## C.   ANALYSIS

Gibson testified that Mother was homeless, lived a nomadic lifestyle, slept in her car, and did not maintain "any type of residence." There was also evidence that Mother left A.A.D. with various individuals and that Mother would not return when these individuals called her to pick up A.A.D. A.A.D. came into the Department's care because it was alleged that Mother left him with an individual who did not intend to accept A.A.D. long term and without clothes, food, and diapers. When this individual contacted Mother to pick up A.A.D., Mother did not respond, and the individual left A.A.D. unattended for an unknown period of time on the porch of where Mother was then known to be sleeping. Mother's failure to provide a stable and nurturing home environment supports a finding that termination is in A.A.D.'s best interest. *See In re A.J.D.-J.*, 667 S.W.3d 813, 824 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ("Parental absence or lack of involvement is especially telling with respect to the best interest of young children, like babies and toddlers, due to their inherent vulnerability and particular need for parental attention and nurturing."); *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("A child's need for permanence through the establishment of a 'stable, permanent home' has been recognized as the paramount consideration in a best-interest determination."); *see, e.g.*, *Adams v. Tex. Dep't of Fam. & Protective Servs.*, 236 S.W.3d 271, 280 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *In re O.J.P.*, No. 01-21-00163-CV, 2021 WL 4269175, at *16 (Tex. App.—Houston [1st Dist.] Sept. 21, 2021, no pet.) (mem. op.).

There was also evidence that A.A.D. was a medically fragile child with

severe breathing issues when he went into the Department's care and that Mother had not provided him with any medical care. Gibson and Foster Mother testified that A.A.D.'s breathing issues were obvious. Gibson testified that A.A.D. was taken straight to the hospital in serious condition after coming into the Department's care. Foster Mother testified that A.A.D.'s doctor immediately diagnosed A.A.D. as needing surgery upon seeing him; that A.A.D. received adenoid surgery; and that A.A.D.'s breathing issues resolved after the surgery. This evidence of Mother's neglect of A.A.D.'s medical needs also supports the trial court's best interest finding. *See* Tex. Fam. Code Ann. § 263.307(a); *In re K.S.O.B.*, No. 01-18-00860-CV, 2019 WL 1246348, at *19 (Tex. App.—Houston [1st Dist.] Mar. 19, 2019, no pet.) (mem. op.) ("[T]he trier of fact may infer from a parent's past inattention to her children's medical needs that such inattention will continue in the future."); *In re S.J.*, No. 14-07-00785-CV, 2009 WL 442485, at *4 (Tex. App.—Houston [14th Dist.] Feb. 24, 2009, no pet.) (mem. op.) ("When deciding termination is in S.J.'s future best-interest, the trial court could have reasonably considered that appellant neglected her new born during such a critical time.").

There was evidence that Mother's criminal history included injury to an elderly individual in 2019, assault bodily injury in 2021, engaging in organized criminal activity in 2022, robbery in 2022, and misdemeanor theft in 2023. This evidence also supports that termination is in A.A.D.'s best interest. *See In re S.H.*, No. 01-22-00255-CV, 2022 WL 17254956, at *18 (Tex. App.—Houston [1st Dist.] Nov. 29, 2022, pet. denied) (mem. op.) ("Criminal activity that exposes a parent to the potential for incarceration is relevant to the trial court's best-interest determination."); *In re T.L.S.*, No. 01-12-00434-CV, 2012 WL 6213515, at *6 (Tex. App.—Houston [1st Dist.] Dec. 13, 2012, no pet.) (mem. op.) ("A

9

parent's . . . criminal history may support a finding that termination of parental rights is in the best interest of a child.").

As to the family service plan, which Mother needed to complete for reunification with A.A.D., Gibson testified that Mother did not complete any of the assignments. This also supports the trial court's best interest finding. *See In re A.J.D.-J.*, 667 S.W.3d at 824 ("[W]hen a parent does not try to abide by the plan, the factfinder may reasonably infer the parent is indifferent to the goal of family reunification."); *In re J.M.T.*, 519 S.W.3d 258, 269–70 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("In addition, the evidence showing that Father failed to complete all of the tasks and services required in his service plan supports the trial court's best interest finding.").

Viewing all of this evidence in the light most favorable to the trial court's finding, we conclude that the evidence is legally sufficient that termination was in A.A.D.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266. Furthermore, viewing the evidence in the record as a whole, we conclude that a reasonable fact finder could form a firm belief or conviction that termination of Mother's parental rights was in A.A.D.'s best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *In re A.C.*, 560 S.W.3d at 631; *Holley*, 544 S.W.2d at 371–72. We thus conclude that the evidence is factually sufficient. *See In re A.C.*, 560 S.W.3d at 631.

We overrule Mother's second issue.

## IV.   CONCLUSION

The trial court's order is affirmed.

/s/    Margaret "Meg" Poissant
       Justice

Panel consists of Justices Hassan, Poissant, and Wilson.

11