**Opinion filed April 11, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00258-CV

_____

## IN THE INTEREST OF J.N., A CHILD

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 10859-CX**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother and unknown father of J.N.[1]  Only the mother has appealed.  On appeal, Appellant challenges the sufficiency of the evidence to support the trial court's finding that termination is in the child's best interest.  We affirm the trial court's order of termination.

---

[1]We use pseudonyms to protect the identities of children.  TEX. R. APP. P. 9.8(b)(2).

## I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2023). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the child. *Id.* at § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." FAM. § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant committed at least one of the acts listed in Section 161.001(b)(1)—specifically, that Appellant: (1) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child; and (2) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the child who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than nine months as a result of the child's removal from Appellant under Chapter 262 because of Appellant's abuse or neglect of the child. *See id.* § 161.001(b)(1)(E), (O). Appellant does not challenge these findings.

The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the child's best interest. *See id.* § 161.001(b)(2). It is this finding that Appellant challenges on appeal. Specifically, Appellant contends that the trial court's finding that termination is in J.N.'s best interest is not supported by legally or factually sufficient evidence.

2

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72

3

(Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the child, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by her past conduct and determine whether termination is in the child's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*,

333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child may recur in the future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Further, the factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

II. *The Evidence Presented at Trial*

When J.N. was an infant, Appellant laid her in her bassinet, placed a bottle in her mouth, and balanced the bottle in an inverted position against the side of the bassinet. This caused J.N. to aspirate and stop breathing. J.N. was rushed to the hospital and treated; she ultimately recovered. Without the Department's intervention, Appellant's mother, J.N.'s grandmother, became J.N.'s primary caretaker until her death in 2018.

After J.N.'s grandmother died, J.N. lived with a relative, then in two subsequent placements before she began living with C.W. (Appellant's niece) and her husband, A.W. Appellant moved to Kansas in 2021 and C.W. became the sole managing conservator of J.N. in June of 2022, when J.N. was ten years old. Appellant was designated as a possessory conservator.

According to C.W., parenting ten-year-old J.N. "was difficult." J.N. revealed to C.W. that she had been sexually assaulted by her uncle. J.N. was smoking methamphetamine, sneaking out to have sex with older men, and "would become very violent when she did not get things she wanted."

5

In October of 2022, the Department filed its original petition in which it sought to terminate Appellant's parental rights, and permit C.W. to adopt J.N. The Department also assisted C.W. with her efforts to manage and redirect J.N.'s harmful behaviors, and to understand J.N.'s ADHD and autism diagnoses.

Although notified, Appellant failed to appear for the final hearing that was scheduled on October 13, 2023. She had been arrested for possession of methamphetamine while this case was pending and was transferred to the Johnson County jail in Kansas for "several DUIs"; she was still confined in Kansas at the time of the final hearing.

Belinda Baysinger, the 2INgage permanency case manager, testified that Appellant only participated by Zoom or telephonic means in one preliminary hearing. She also discussed with Appellant the requirements of her Family Plan of Service. However, Appellant ceased communicating with the Department in March of 2023. T.N., Appellant's sister, disclosed that she has maintained consistent contact with Appellant, and spoke to her over the phone as recently as the day before the hearing.

The trial court terminated Appellant's parental rights under Section 161.001(b)(1)(E) and (O) and found termination to be in the best interest of the child. This appeal followed.

### III. *The Best Interest of the Child Determination*

In Appellant's sole issue, she challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of the child.

First, we reiterate that evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). Put differently, the

6

absence of evidence on some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.). Indeed, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.). "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013).

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the trier of fact so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving due deference to the trial court, as we must, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of the child. *See Holley*, 544 S.W.2d at 371–72.

As we have said, in its best interest determination, a trial court, as the factfinder, may infer that a parent's past endangering conduct may recur if the child is returned to the parent. *See In re L.N.C.*, 573 S.W.3d 309, 318 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *J.D.*, 436 S.W.3d at 118; *see also In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("factfinder may consider prior CPS history of neglect, drug abuse, or lack of care for the children"). Evidence that is relevant to Section 161.001(b)(1) termination grounds may also be relevant to the determination of the child's best interest. *In re C.V.L.*, 591 S.W.3d 734, 753 (Tex. App.—Dallas

2019, pet. denied). And evidence that supports termination under the grounds listed in Section 161.001(b)(1) can be considered in the best-interest analysis. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266. Thus, the trial court could properly consider Appellant's failure to comply with the conditions of her family service plan, her arrests for drug use and other criminal conduct, and other evidence of endangerment in determining whether the termination of her parental rights was in the child's best interest. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The record shows that J.N. expressed the desire "to be adopted by [C.W.] and [A.W.]." According to Baysinger, J.N. "wants a level of permanency," and "doesn't want to be tossed around" in the foster care system. C.W. and A.W. hope to adopt J.N. and are participating in parenting classes and family counseling to ensure that they can provide "a healthy and stable life" for her. C.W. testified that J.N.'s behavior has greatly improved, and their dynamic "has become a wonderful parent and child relationship." J.N. no longer acts out sexually, rarely throws things out of anger, is doing better in school, and has not engaged in self-harm.

By contrast, there is no evidence that Appellant has any plans or intention to provide for J.N.'s physical or emotional needs. In fact, since the incident whereby J.N., as an infant, choked on a bottle which caused her to stop breathing, Appellant's mother became J.N.'s sole caregiver. After Appellant's mother died, Appellant moved to Kansas, and essentially left J.N. to the mercy of C.W. and the Department. J.N. revealed that she was sexually assaulted by her uncle, and began using drugs, engaging in sexual conduct, drinking alcohol, and "displaying very sexualized behaviors." The uncontroverted evidence thus shows that Appellant was unwilling or unable to provide a safe and stable home for J.N., which supports the trial court's best-interest finding. *See Holley*, 544 S.W.2d at 371–72.

The Department endeavored to work with Appellant, but her participation in her required services was "[s]everely lacking." Appellant did not submit to drug

testing when such tests were requested by the Department, provided no proof of stable housing or employment, did not engage in counseling or parenting classes, and did not attend scheduled visitations with J.N. Appellant's failure to comply with her family service plan requirements and to meaningfully participate in judicial proceedings further support the trial court's best-interest finding. *See E.C.R.*, 638 S.W.3d at 769 ("A trial court is permitted to consider a parent's . . . failure to comply with a family plan of service in its best interest determination."); *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with [her] family service plan support a finding that termination is in the best interest of the child.").

Moreover, Appellant ignored the Department's repeated attempts to contact her in the months preceding the final hearing, and she and her sister, T.N., did not discuss the pending termination proceedings when they spoke the day before the final hearing. Appellant's clear parental indifference supports the trial court's finding that terminating her parental rights is in J.N.'s best interest. *See In re A.J.D.-J.*, 667 S.W.3d 813, 823 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ("[S]ignificant evidence of parental indifference weighs heavily in favor of a factfinder's finding that termination is in a child's best interest.").

For the last decade, Appellant has made no effort to regain custody of J.N. She has likewise showed no interest in even maintaining her status as a possessory conservator. Appellant's apathy and heedlessness strongly suggest that the existing parent-child relationship is not a proper one. *See id.* Put simply, the evidence shows that Appellant has declined to participate in J.N.'s childrearing due to her lack of interest. Therefore, this parent-child bond is fundamentally broken. Based on this record, we conclude that the trial court properly determined that clear and convincing evidence establishes that the termination of Appellant's parental rights is in the best interest of J.N. *See id.* at 823–24.

Accordingly, we overrule Appellant's sole issue.

## IV. *This Court's Ruling*

We affirm the order of the trial court.


W. STACY TROTTER

JUSTICE


April 11, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.