**Opinion filed August 8, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00073-CV

_____

## IN THE INTEREST OF I.N., F.N., AND E.N., CHILDREN

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 10921-CX**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother and father of I.N., F.N., and E.N.[1] Only the father, Appellant, has appealed. On appeal, Appellant challenges the sufficiency of the evidence to support the trial court's finding that termination is in the children's best interest. We affirm the trial court's order of termination.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2023). To terminate

---

[1]We use initials to refer to the children and their family members. *See* TEX. R. APP. P. 9.8(b).

one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the child. *Id.* at § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." FAM. § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant committed at least one of the acts listed in Section 161.001(b)(1)—specifically, that Appellant: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; (3) constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than six months, and despite the Department's reasonable efforts to return the children to Appellant, he did not regularly visit or maintain significant contact with the children, and demonstrated an inability to provide the children with a safe environment; and (4) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the children who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from Appellant under Chapter 262 because of Appellant's abuse or neglect of the children. *See id.* § 161.001(b)(1)(D), (E), (N), (O).

2

The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the children's best interest. *See id.* § 161.001(b)(2). On appeal, Appellant challenges the trial court's best-interest finding as being unsupported by legally or factually sufficient evidence.

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021))). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—

Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the child, not the parent. *In re E.C.R.*, 638

S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his past conduct and determine whether termination is in the child's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child may recur in the future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Additionally, the factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

*The Evidence Presented at Trial*

The Department sought temporary managing conservatorship of I.N., F.N., and E.N. on December 15, 2022, while they were living with their mother. At that time, Appellant was confined in the Taylor County jail for assaulting the mother, but was released in May of 2023.

Appellant eventually contacted the Department in July of 2023. Brittany Elizondo, the 2INgage permanency case manager, met with Appellant to explain the court-ordered requirements in his Family Plan of Service. Elizondo verified Appellant's reported address, which was "a halfway house for men to . . . get help getting on their feet." Due to the "people coming and going," and the Department's inability to "run background checks on everybody in that place," it was not a safe

5

home environment for children. Appellant has not reported a change in residence since July of 2023.

Appellant was present for the final hearing on March 12, 2024. The mother did not appear, and previously signed an affidavit of voluntary relinquishment of her parental rights to her children. At trial, the Department introduced judgments reflecting Appellant's six misdemeanor convictions, including criminal mischief, harassment, and assault family violence committed against the mother. In addition to Appellant's criminal convictions, the mother reported at least one other incident of abuse to the Department that occurred on July 4, 2023 in which Appellant struck her in the face by throwing a phone at her. And as recent as January 30, 2024, Appellant was arrested for kicking in the mother's front door, grabbing her, pulling her down the stairs, and punching her in the face multiple times.

The trial court heard from two witnesses: Elizondo, and the children's paternal aunt and current caregiver, A.F., who hopes to adopt them. Elizondo described Appellant's participation in his service plan requirements as "[t]ouch and go." As part of his service plan, Appellant was ordered to:

- maintaining safe, stable, and appropriate housing free from domestic violence, drugs, and alcohol;

- notify his permanency case manager of any changes in employment, address, phone number, or household members;

- provide proof of legal employment by check or W-2;

- "engage in an organized program to assist him in dealing with anger/battering issues involved in domestic violence";

- submit to random drug and alcohol testing by urinalysis, hair follicle, or oral swab when requested, and "test negative on both urine and hair drug tests";

- attend individual counseling, family counseling, and "Betty Hardwick for any mental health needs";

- attend scheduled supervised visitation with his children.

Appellant completed his parenting classes and psychological evaluation, but did not participate in the recommended individual and family counseling and psychiatric consultation. Appellant was asked to drug test "bare minimum monthly," but he often failed to comply. He provided a hair sample in July of 2023, the results of which were positive for methamphetamine and marihuana. Appellant subsequently refused to test in September of 2023, and again from November through February of 2024 when he stopped responding to Elizondo's contact attempts.

Coinciding with Appellant's sporadic communication with the Department, he only attended four of the scheduled visits with his children, and has not seen them since October of 2023. A.F. testified that he brought her groceries for the children once, but has never provided financial support.

With A.F., the children are "doing awesome . . . they're all just doing really good, and they're happy." A.F. lamented that the children "came from a . . . very hard home," and "were really confused" when she began caring for them. But after having been with her for over a year, they are "very happy," and have grown "[e]motionally . . . [e]ducationally . . . in all aspects."

The trial court terminated Appellant's parental rights under Section 161.001(b)(1)(D), (E), (N), and (O), and found termination to be in the best interest of the children. This appeal followed.

*The Best Interest of the Children Determination*

In Appellant's sole issue, he challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in the best interest of the children.

First, we reiterate that evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). Put differently, the

7

absence of evidence on some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.). "[E]vidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.). "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013).

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the trier of fact so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving due deference to the trial court, as we must, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72.

In its best interest determination, a trial court, as the factfinder, may infer that a parent's past endangering conduct may recur if the child is returned to the parent. *See In re L.N.C.*, 573 S.W.3d 309, 318 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *J.D.*, 436 S.W.3d at 118; *see also In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("factfinder may consider prior CPS history of neglect, drug abuse, or lack of care for the children"). Evidence that is relevant to Section 161.001(b)(1) termination grounds may also be relevant to the determination of the child's best interest. *In re C.V.L.*, 591 S.W.3d 734, 753 (Tex. App.—Dallas 2019, pet. denied). And evidence

8

that supports termination under the grounds listed in Section 161.001(b)(1) can be considered in the best-interest analysis. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266. Therefore, the trial court could properly consider Appellant's failure to comply with the conditions of his family plan of service, his drug use, and other evidence of endangerment in determining whether the termination of his parental rights was in the children's best interest. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The record shows that Appellant and the mother of I.N., F.N., and E.N. had an abusive, tumultuous relationship. They were unable to co-parent without the mother occasionally ending up in the hospital, calling the police, or both. Less than two months before the final hearing, Appellant violently assaulted the mother. Appellant's criminal history and violence demonstrate "a pattern of conduct that is inimical to the very idea of child-rearing." *C.H.*, 89 S.W.3d at 28; *see also J.F.-G.*, 627 S.W.3d at 316–17 & n.51. Such evidence weighs heavily in favor of the trial court's finding that terminating Appellant's parental rights was in the children's best interest. *See L.C.C.*, 667 S.W.3d at 515 (domestic violence between the parents supports the trial court's finding that termination of parental rights is in the child's best interest); *see also In re J.G.*, No. 04-23-00879-CV, 2024 WL 1293953, at *4 (Tex. App.—San Antonio Mar. 27, 2024, pet. denied) (mem. op.) ("The trial court could have reasonably concluded that Father's refusal to address his domestic violence and anger issues poses an emotional and physical danger to the children.").

The uncontroverted evidence likewise shows that Appellant was unwilling or unable to provide a safe and stable home for the children, failed to maintain consistent contact with his permanency case manager, and did not complete his required services. *See J.W.*, 645 S.W.3d at 742 (considering the parent's unstable and uncertain living situation in upholding the trial court's best-interest finding); *Holley*, 544 S.W.2d at 371–72. He provided no proof of stable housing or

employment, refused to submit to drug testing when requested, and admitted to using methamphetamine two months prior to the final hearing. Appellant ignored his numerous referrals for the substance abuse assessment and individual and family counseling, missed scheduled visitation with his children, and never attended his required anger and domestic violence courses. Appellant's continuing pattern of illegal drug use, failure to comply with his service plan, and his failure to secure a safe and stable home for his children support the trial court's best-interest finding. *See In re E.D.*, 682 S.W.3d 595, 607 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) (continuing pattern of illegal drug use "implicates most of the *Holley* factors"); *E.C.R.*, 638 S.W.3d at 769 ("A trial court is permitted to consider a parent's . . . failure to comply with a family plan of service in its best interest determination."); *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with his family service plan support a finding that termination is in the best interest of the child.").

Between October of 2023 and February of 2024, Appellant disengaged from communications, services, and the children themselves, thereby "posing a substantial risk to the children's emotional well-being." *In re R.R.A.*, 687 S.W.3d 269, 281 (Tex. 2024). Despite his assertion on appeal that he "checked in with [A.F.] on different occasions," Appellant's inconsistent "check[ing] in" was by sending A.F. a text message "once a month, usually, but that's about it." He provided no financial support, and refused to submit to drug testing as a prerequisite to resume visitation. The trial court could have rationally inferred that Appellant was indifferent to seeing his children, and continued to use methamphetamine during the pendency of this case, which supports a finding that termination is in the children's best interest. *See In re A.J.D.-J.*, 667 S.W.3d 813, 823 (Tex. App.—Houston [1st

Dist.] 2023, no pet.) ("[S]ignificant evidence of parental indifference weighs heavily in favor of a factfinder's finding that termination is in a child's best interest.").

Finally, and most "[i]mportantly, given the child-centered focus of the best-interest inquiry, we may not discount or minimize the level of permanence" and stability that the children have achieved in A.F.'s care. *See J.W.*, 645 S.W.3d at 747. The children are happy, attending school and regular medical appointments, and are surrounded by "plenty of caretakers." They have bonded with A.F., and expressed the desire to stay with her. *See Holley*, 544 S.W.2d at 371–72. Appellant heavily relies on A.F.'s testimony that the children "ask about having contact with [him]," but that is only one factor that we consider in the overall best interest analysis. *See Holley*, 544 S.W.2d at 372; *cf. In re F.M.E.A.F.*, 572 S.W.3d 716, 732 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("A child's love for a parent cannot be ignored as a reflection of the parent's ability to provide for the child's emotional needs."). A child's wishes cannot override or outweigh evidence of danger to the child and are not binding on the trial court. *See* FAM. § 153.009(c) (West 2014); *F.M.E.A.F.*, 572 S.W.3d at 732; *see also In re J.S.*, No. 11-23-00234-CV, 2024 WL 1313075, at *8 (Tex. App.—Eastland Mar. 28, 2024, no pet.) (mem. op.) (citing *Hart v. Kozik*, 242 S.W.3d 102, 109 (Tex. App.—Eastland 2007, no pet.)).

Upon considering the record as it relates to Appellant's actions and inactions, the emotional and physical danger to the children now and in the future, the emotional and physical needs of the children now and in the future, Appellant's parental abilities, Appellant's criminal history, the domestic violence in the home, and the Department's plans for the children, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of the children. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72. Accordingly, we overrule Appellant's sole issue.

## VI. *This Court's Ruling*

We affirm the order of the trial court.

JOHN M. BAILEY

CHIEF JUSTICE

August 8, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.