**Opinion filed August 30, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00061-CV

_____

## IN THE INTEREST OF Z.B., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 10992-CX**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother and father to Z.B.[1]  Only the mother, Appellant, has appealed.  On appeal, Appellant challenges the sufficiency of the evidence to support the trial court's finding that termination is in the child's best interest.  We affirm the trial court's order of termination.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence.  TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2023).  To terminate

---

[1]We use initials to refer to the child and the child's family members.  *See* TEX. R. APP. P. 9.8(b).

one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the child. *Id.* at § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." FAM. § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant committed at least one of the acts listed in Section 161.001(b)(1)—specifically, that Appellant: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the child who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than nine months as a result of the child's removal from Appellant under Chapter 262 because of Appellant's abuse or neglect of the child. *See id.* § 161.001(b)(1)(D), (E), (O).

The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the child's best interest. *See id.* § 161.001(b)(2). On appeal, Appellant challenges the trial court's best-interest finding as being unsupported by legally or factually sufficient evidence.

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most

2

favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021))). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals

to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the child, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by her past conduct and determine whether termination is in the child's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child may recur in the future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v.*

4

*May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Additionally, the factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

*The Evidence Presented at Trial*

On September 16, 2022, Appellant and Z.B.'s father, A.S., were stopped by police with Z.B. and another young child in the car. Z.B. was nearly a year old at the time. The police officer searched the vehicle and found "marijuana shake" under the passenger seat, in Z.B.'s car seat, and in Z.B.'s diaper bag. Both parents took responsibility for the marihuana, but only A.S. was arrested. Due to the marihuana being within Z.B.'s reach, and the other child passenger riding without a car seat, the police reported the incident to the Department.

Initially, the Department provided family-based safety services (FBSS) to Appellant, but she did not comply. The Department sought removal of Z.B. on February 24, 2023 after Appellant's drug screen showed positive results for cocaine and marihuana, and Z.B. tested positive for methamphetamine.

The parties appeared for the final termination hearing on February 15, 2024. The 2Ingage case manager, Robert Smith, testified that Appellant was ordered to complete the tasks in her Family Plan of Service, which included, *inter alia*, the requirements to:

- submit to and test negative on random drug screens;

- complete a substance abuse assessment and follow any recommendations;

- maintain stable housing free of any health and safety hazards and allow representatives for the Department, 2INgage, CASA, and the attorney ad litem to conduct announced and unannounced home visits;

5

- maintain a legal source of income and provide proof thereof to "demonstrate the ability to financially care for" Z.B.;

- complete a psychological evaluation and a parenting course; and

- attend scheduled parent-child visitation.

Appellant successfully completed a parenting course, a psychological evaluation, and the substance abuse assessment, but did not follow the relapse safety plan recommendation. She also failed to provide the Department proof of legal income after changing jobs, and missed seven visits with Z.B. between November 2023 and the final hearing.

Additionally, Smith was unable to conduct a home visit—Appellant "bl[ew] [him] off" every time he requested access to her purported residence, claiming that she "went out of town" or "ha[d] something to do." At the inception of the Department's involvement, Appellant told Smith that she was "staying with her mother," but has been "moving from home to home" throughout the life of the case. The night before the final hearing, Smith learned from Appellant's brother that Appellant was "basically couch hopping." Appellant stayed with her brother the previous night, but was no longer there, and he did not know her whereabouts. Although Appellant appeared for trial, she presented no evidence that she had or intended to have a permanent residence.

Appellant's drug test results revealed that she tested positive for marihuana and cocaine in October 2022 and February 2023. She tested positive for marihuana in December 2022, and January, June, and September 2023. Appellant refused to submit to drug testing for the three months preceding the final hearing.

Appellant testified that she only uses marihuana, and has never used cocaine. She insisted that she never used marihuana around Z.B., and has been sober "[s]ince [her] case has been open." According to Appellant, the positive drug tests were

attributed to the marihuana "coming out of [her] system," and if the drug tests showed "anything other than marijuana, it's a lie."

Z.B. has been in his current placement since March 27, 2023, and his foster mother intends to adopt him. Z.B.'s foster mother, a special education teacher, told the trial court that she takes Z.B. to daycare and his regular medical appointments, and they "are in the process of potty training." Z.B. refers to her as "mom," and he has bonded with her and her two older daughters.

The trial court terminated Appellant's parental rights under Section 161.001(b)(1)(D), (E), and (O), and found termination to be in the best interest of the child. This appeal followed.

*The Best Interest of the Child Determination*

In Appellant's sole issue, she challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of the child.

First, we reiterate that evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). "Put differently, the absence of evidence on some of these factors does not preclude a best interest finding, 'particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety.'" *S.O.*, 2023 WL 2237084, at *11 (quoting *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.)). "[E]vidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *Id.* (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)). "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013).

7

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the trier of fact so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving due deference to the trial court, as we must, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of the child. *See Holley*, 544 S.W.2d at 371–72.

As we have said, in its best interest determination, a trial court, as the factfinder, may infer that a parent's past endangering conduct may recur if the child is returned to the parent. *See In re L.N.C.*, 573 S.W.3d 309, 318 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *J.D.*, 436 S.W.3d at 118; *see also In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("The factfinder may consider prior CPS history of neglect, drug abuse, or lack of care for the children."). Evidence that is relevant to Section 161.001(b)(1) termination grounds may also be relevant to the determination of the child's best interest. *In re C.V.L.*, 591 S.W.3d 734, 753 (Tex. App.—Dallas 2019, pet. denied). And evidence that supports termination under the grounds listed in Section 161.001(b)(1) can be considered in the best-interest analysis. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266. Therefore, the trial court could properly consider Appellant's failure to comply with the conditions of her family service plan, her drug use, as well as the child's close proximity to marihuana and his positive drug test for methamphetamine in determining whether the termination of her parental rights was in the child's best interest. *See C.H.*, 89 S.W.3d at 28; *In re J.S.*, 687 S.W.3d 541, 552 (Tex. App.—Eastland 2024, no pet.).

The record shows that despite the Department's efforts to reunify Appellant with her child, Appellant failed to maintain stable housing, refused to permit the Department to conduct a home visit, missed scheduled visits with Z.B., ignored several requests to submit to drug testing, and tested positive for drugs on numerous occasions. The trial court was permitted to consider Appellant's failure to comply with her family service plan requirements in its best interest determination. *E.C.R.*, 638 S.W.3d at 769; *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with [her] family service plan support a finding that termination is in the best interest of the child.").

Appellant asserted that she has not smoked marihuana "since that traffic stop," but admitted to marihuana use prior thereto. In the year following the traffic stop in September 2022, Appellant continued to test positive for marihuana, and refused to submit to testing as the final hearing date approached. This evidence permits the strong inference that Appellant continued to use marihuana, and was indifferent to the risks and consequences of her behavior. *See In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("[A] fact finder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates the parent is avoiding testing because they were using illegal drugs."); *see also In re A.J.D.-J.*, 667 S.W.3d 813, 823 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ("[S]ignificant evidence of parental indifference weighs heavily in favor of a factfinder's finding that termination is in a child's best interest.").

Even if Appellant's positive drug test results could be attributed to the substance "coming out of [her] system," "recent improvement alone is not sufficient to avoid termination of parental rights." *See N.T.*, 474 S.W.3d at 479; *see also J.O.A.*, 283 S.W.3d at 346 ("[E]vidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug

9

use and irresponsible choices."). That is especially true under these circumstances, given the evidence of child endangerment. Appellant was pulled over while driving her infant in a car that smelled like marihuana, and marihuana was in fact found in the child's car seat. Z.B. subsequently tested positive for methamphetamine. The trial court reasonably could have inferred from this evidence, "in the aggregate," that Appellant's conduct "pos[ed] a substantial risk to the [child's] emotional" and physical well-being. *See R.R.A.*, 687 S.W.3d at 281. This evidence further contradicts Appellant's testimony that she "never" used drugs around Z.B., and was highly relevant to the evaluation of the child's best interest. *See In re J.L.*, 163 S.W.3d 79, 87 (Tex. 2005) (considering all evidence of endangerment in evaluating evidentiary sufficiency of best-interest finding).

Furthermore, whether the child will be returned to a safe and stable home environment is an exceedingly significant consideration in the best-interest determination. *See* FAM. § 263.307(a) (West 2019) ("[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest."); *J.D.*, 436 S.W.3d at 119 ("A parent's inability to provide adequate care for her children, unstable lifestyle, lack of a home and income, lack of parenting skills, and poor judgment may be considered when looking at the children's best interest."). Here, the uncontroverted evidence shows that Appellant repeatedly evaded the Department's attempts to ascertain where she was living, and whether it was safe for Z.B. *See J.W.*, 645 S.W.3d at 742 (considering the parent's unstable and uncertain living situation in upholding the trial court's best-interest finding). In this regard, "couch hopping" is irrefutably unsafe and unsuitable for a child. *See id*. Therefore, the trial court could reasonably infer that Appellant was unwilling or unable to provide a safe and stable home for Z.B., which supports the trial court's best-interest finding. *See Holley*, 544 S.W.2d at 371–72.

Most importantly, given the child-centered focus of the best-interest inquiry, we may not discount or minimize that Z.B. is "thriving" and "happy" in his current placement. He refers to his foster mother as "mom," has bonded with her and her daughters, and is attending daycare and his regular medical checkups. Appellant, by contrast, has no plans or intentions to provide for her child's physical and emotional needs. The trial court rationally inferred that Z.B.'s physical and emotional needs are being met in the care of his foster mother, who ultimately hopes to adopt him. *See Holley*, 544 S.W.2d at 371–72.

Upon considering the record as it relates to Appellant's actions and inactions, the emotional and physical danger to the child now and in the future, the emotional and physical needs of the child now and in the future, Appellant's parental abilities, and her positive drug tests and refusals to test, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of the child. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72. Accordingly, we overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the order of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

August 30, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

11