**Opinion filed November 21, 2024**



# In The

# Eleventh Court of Appeals

_____

## No. 11-24-00170-CV

_____

## IN THE INTEREST OF E.H. AND I.H., CHILDREN

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 11084-CX**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother and father of E.H. and I.H.[1]  Only the father, Appellant, has appealed.  On appeal, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in E.H.'s and I.H.'s best interest.  Although he briefs the issues separately for each child, we address the best interests of the children together.  We affirm the trial court's order of termination.

---

[1]We use initials to refer to the children and their family members.  *See* TEX. R. APP. P. 9.8(b).

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2024). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the child. *Id.* at § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." FAM. § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant committed at least one of the acts listed in Section 161.001(b)(1)—specifically, that Appellant: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings, which endangered the physical or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct, which endangered the physical or emotional well-being of the children; (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the children who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal under Chapter 262 because of Appellant's abuse or neglect of the children; and (4) knowingly engaged in criminal conduct that resulted in his conviction, confinement, and inability to care for the children for not less than two years from the date of filing the petition. *See id.* § 161.001(b)(1)(D), (E), (O), (Q). The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the children's best interest. *See id.* § 161.001(b)(2). On appeal, Appellant challenges

2

the trial court's best-interest finding as being unsupported by legally or factually sufficient evidence.

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex.

App.—Fort Worth 2001, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the child, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his past conduct and determine whether termination is in the child's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child may recur in the future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). The factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

*The Evidence Presented at Trial*

In May 2023, E.H.'s and I.H.'s maternal grandmother reported that Mother was using drugs and sexually abusing the children. In June 2023, after Mother admitted to sexually assaulting I.H. and E.H., the Texas Department of Family and Protective Services (the Department) removed the children.

Mother executed an affidavit voluntarily relinquishing her parental rights to E.H. and I.H., and did not appear for the final hearing on May 15, 2024. Appellant was transported to the hearing from prison, and testified after the Department presented two witnesses.

At the time of removal, Appellant had just begun serving a seven-year prison sentence. He was convicted of aggravated assault with a deadly weapon after violating the conditions of his deferred adjudication community supervision. Appellant committed the offense in April 2019 when his son, E.H., was six months old, and Mother was pregnant with I.H. Appellant crashed into a vehicle with two

occupants. When the passenger exited the vehicle, Appellant intentionally ran into her with his vehicle, then advanced on foot toward the driver and passenger while brandishing a machete.

On November 6, 2019, he was placed on deferred adjudication community supervision. Within a week, Appellant began violating his community supervision conditions by possessing and using methamphetamine. In addition to his own marihuana and methamphetamine use, Appellant was aware that Mother used marihuana while pregnant with I.H. I.H. tested positive for marihuana when she was born on December 20, 2019.

When I.H. was a few weeks old, Appellant ended his relationship with Mother due to "marital issues and disagreements" and moved out. According to Appellant, Mother "maybe . . . let [him] visit the kids once . . . very briefly." He claimed to see the children "[a]s often as [he] could," but Mother "never wanted [him] to be alone with [the] children," which he "assumed . . . was because of the substance abuse." When asked about his substance abuse, Appellant testified that before having children, he used "psychedelics, alcohol, mari[h]uana, [and] methamphetamine," but "[i]t didn't become a problem until [his] marriage started falling apart and [he] started abusing the substances."

Appellant's methamphetamine and marihuana use continued through 2020 until he was arrested on his outstanding warrant for violating his community supervision conditions. He was in jail when the Department investigated a report "alleging physical abuse and neglectful supervision of" E.H. and I.H. in August 2020. The children tested positive for marihuana in September 2020, and Mother was ordered to complete family-based safety services.

In November 2021, after Appellant was released from residential treatment, he absconded from the transitional treatment center, and remained at large until late

2022 or early 2023. Appellant testified that he is eligible for parole on March 13, 2025, but his maximum sentence date is September 2028.

Upon removal in June 2023, E.H. and I.H. were placed with Appellant's sister, A.K., who lived with her husband and two children. Cindy Hall, the permanency case manager, testified that the children are doing "fairly well" and "seem to be happy" in their aunt's home. I.H. is receiving speech therapy at preschool, has exhibited "some emotional and behavioral issues," and "may be autistic." E.H. is healthy and doing "really well in school." E.H. speaks favorably about Appellant, "wonders what he looks like," and wants to "meet him again." Hall "think[s] that [E.H.] wants to maintain a relationship with his father," and is "starting to forget what his parents look like." I.H. has never expressed a preference regarding her parents. Appellant writes letters to his children from prison, but recognized, "there's really no processing at their age of what's going on with [him]."

Prior to the final hearing, A.K. called Hall and was concerned that she could no longer care for E.H. and I.H. According to A.K., law enforcement wanted to re-interview the children regarding the criminal charges against Mother, requiring them to "rehash all their feelings that they had from the abuse that they suffered." A.K. decided that her family could not "adjust to the kids being there with . . . all the trauma that they introduced into the home." Hall convinced A.K. to "wait until after the hearing to make a decision," and testified that the Department would find a foster home for the children if A.K. decided not to adopt them.

Hall agreed that Appellant has "another year of incarceration, roughly" before he is eligible for parole, but he "is likely to be incarcerated for several more years at this point." She opined that Appellant is unable to provide a safe and stable home environment for the children. Appellant also admitted that he does not have the financial ability to provide for his children while incarcerated. The Department

created a Family Plan of Service for Appellant, and he did "what [he was] able to while incarcerated."

*The Best Interest of the Children Determination*

Addressing the best interests of the two children together, we reiterate that the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. Further, we note that "'best interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant [trial court] discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72). Giving due deference to the trial court, as we must, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination of Appellant's parental rights is in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72.

Although Appellant does not contest the trial court's findings of the Section 161.001(b)(1) termination grounds, evidence that supports termination under the grounds listed in Section 161.001(b)(1) can be considered in the trial court's best-interest analysis. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266. Here, the trial court could properly consider Appellant's criminal history, drug use, his knowledge of Mother's drug use while pregnant with I.H., and other evidence of endangerment in determining whether the termination of his parental rights is in the children's best interest. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

With respect to Appellant's drug use, there is no requirement of proof that the parent's use directly harmed the children to terminate the parent-child relationship. *In re R.R.A.*, 687 S.W.3d 269, 276–78 (Tex. 2024) ("a pattern of drug use

8

accompanied by circumstances that indicate related dangers to the child can establish a substantial *risk* of harm"). Rather, a reviewing court evaluates based on all the "evidence that a factfinder could reasonably credit" whether a parent's "illegal drug use present[ed] a risk to the parent's 'ability to parent.'" *Id.* at 278 (quoting *J.O.A.*, 283 S.W.3d at 345). Here, Appellant conceded that his drug use led to his incarceration but testified that "[he is] making [his] best effort now" to avoid illegal substances. He explained: "I believe I'm going to continue . . . stability so long as I have the wherewithal." Appellant declared that drugs are not "so controlling" that "[he] would jeopardize everything [he has] or [stood] to gain."

Notwithstanding his professed aspirations, Appellant's only plan to maintain sobriety is to continue attending AA and NA meetings. He only gave a verbal nod to the legal and employment consequences of drug use, stating that neither his future boss nor the Department "are . . . going to tolerate things of that nature." Further, the trial court heard evidence that Appellant used drugs within six days of being placed on deferred adjudication for a violent second-degree felony. He also left a transitional treatment center without the trial court's permission, and never reported to the community supervision department for a year thereafter. Moreover, although Appellant denied drug use around his children, he knew Mother used marihuana while pregnant with I.H. Appellant's drug use and failure to report to his community supervision officer resulted in his felony conviction, and his "lack of housing[,] and ability to support his children" also "exemplify risks that a pattern of drug use can create." *R.R.A.*, 687 S.W.3d at 279. The trial court could consider in its best interest determination, among other factors, that Appellant's past endangering conduct may recur if the children were returned to him. *See In re L.N.C.*, 573 S.W.3d 309, 318 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *J.D.*, 436 S.W.3d at 118; *see also In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("factfinder may consider prior CPS

history of neglect, drug abuse, or lack of care for the children"). Considering the "close temporal relationship" between Appellant's drug use and his sentence of imprisonment, the trial court could rationally infer that Appellant's illegal drug use had a detrimental effect on his ability to parent. *See R.R.A.*, 687 S.W.3d at 278–79.

Appellant claimed to have completed a parenting class and attend AA and NA meetings during his incarceration, and purportedly has employment when he is released. He intends to care for his children "as soon as [he is] settled in parole and [he is] . . . financially stable and can provide a safe place for [them]." But "recent improvement alone is not sufficient to avoid termination of parental rights." *See In re N.T.*, 474 S.W.3d 465, 479 (Tex. App.—Dallas 2015, no pet.) (quoting *In re K.D.C.*, No. 02-12-00092-CV, 2013 WL 5781474 at *16 (Tex. App.—Fort Worth Oct. 24, 2013, no pet.). Appellant's minimal effort in his one and one-half years of imprisonment does not outweigh his absence from his children's lives in the preceding years. *See J.W.*, 645 S.W.3d at 742 (considering the parent's unstable and uncertain living situation in upholding the trial court's best-interest finding). And his remote desire to eventually support his children may hold little weight in the present. *See* FAM. § 263.307(a) (prompt and permanent placement of child in safe environment presumed to be in child's best interest). Consequently, the trial court could consider Appellant's failure to demonstrate the ability to secure stable housing upon release, and his impermanent and uncertain living situation in determining the best interests of the children. *J.D.*, 436 S.W.3d at 119 ("A parent's inability to provide adequate care for [his] children, unstable lifestyle, lack of a home and income, lack of parenting skills, and poor judgment may be considered when looking at the children's best interest.").

Appellant argues that his children "want[] to continue to have a relationship" with him, and minimizes or ignores the evidence presented of the remaining *Holley* factors. He contends that it is in his children's best interest to "give [him] sufficient

time to complete his incarceration and for the family to then resume being a family." Appellant's testimony that he is eligible for parole in March 2025, though relevant, is inherently speculative. *See In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006). It thus did not prevent the trial court from forming a firm conviction or belief that Appellant would remain incarcerated until his scheduled release in September 2028. *See id.*

Appellant asserted at trial that Mother "was keeping [him] from the children." However, the record reflects that Appellant has "been incarcerated for a large portion" of the children's lives. When he was not in jail or residential treatment, he lived in Stamford, Texas, and fathered another child. When asked about the circumstances of the aggravated assault, Appellant averred that "[he] was actually guilty for causing a wreck . . . and it led to an[] altercation that was not mitigated very well." Appellant then threatened the other driver with a machete, but claimed that he did so only "for [his] own defense." Appellant's excuses and failure to take responsibility permits the inference that he will continue to excuse and avoid his parental obligations in the future, which supports the trial court's best-interest finding. *See In re A.J.D.-J.*, 667 S.W.3d 813, 837 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (A parent's "failure to provide valid excuses for [his] behavior weighs in favor of the trial court's finding that termination of [his] parental rights is in the child's best interest.").

E.H. expressed his desire to have a relationship with Appellant. But Hall opined that Appellant's letters to the children "create a little bit of problems for the kids because they don't really understand what [the] letter[s] mean;" "all of a sudden they think they're going to live with [Appellant]" after receiving a letter from him. While we do not ignore a child's desires, it is only one factor that we consider in the overall best interest analysis. *See Holley*, 544 S.W.2d at 372; *cf. In re F.M.E.A.F.*, 572 S.W.3d 716, 732 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("A

11

child's love for a parent cannot be ignored as a reflection of the parent's ability to provide for the child's emotional needs."). A child's desires or wishes for residing with a parent is an important consideration in determining the best interest of the child, but "it cannot override or outweigh evidence of danger to the child." *F.M.E.A.F.*, 572 S.W.3d at 732. Moreover, a child's expressed preference is not binding on the trial court. FAM. § 153.009(c) (West 2014); *see Hart v. Kozik*, 242 S.W.3d 102, 109 (Tex. App.—Eastland 2007, no pet.) (citing *In re Marriage of Stockett*, 570 S.W.2d 151, 153 (Tex. App.—Amarillo 1978, no writ)). Given Appellant's conduct that endangered his children, which resulted in his prolonged absence and inability to provide a safe a stable home for them, E.H.'s desire to maintain a relationship with Appellant does not substantially weigh against the multiple other best interest considerations that may result in a finding of termination. *See Hart*, 242 S.W.3d at 109.

Furthermore, the children are improving and "doing well" in their current placement. Although "[e]vidence about placement plans and adoption are, of course, relevant to best interest," a "lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor." *C.H.*, 89 S.W.3d at 28. Otherwise, terminations would regularly be subject to reversal on the sole ground that "an adoptive family has yet to be located." *Id.*; *see also F.M.E.A.F.*, 572 S.W.3d at 732. It was unknown at the time of the final hearing whether A.K. was willing to adopt the children, but she was committed to providing the children with an environment and structure where they can succeed, and will do so until they find a permanent home. Appellant, on the other hand, has not demonstrated an ability to provide his children with a safe, stable home environment, and has neglected to do so for the majority of their lives. Therefore, we conclude that the trial court properly found that here, their delayed permanent placement does not weigh against a best-

interest finding and termination of Appellant's parental rights. *See C.H.*, 89 S.W.2d at 28; *F.M.E.A.F.*, 572 S.W.3d at 732.

Upon considering the record as it relates to Appellant's actions and inactions, the emotional and physical danger to the children now and in the future, the emotional and physical needs of the children now and in the future, the lack of Appellant's parental abilities, and his criminal history and history of drug abuse, it is clear that Appellant exhibited "a pattern of conduct that is inimical to the very idea of child-rearing," and that the existing parent-child relationship is not a predictably stable one. *C.H.*, 89 S.W.3d at 28; *see J.F.-G.*, 627 S.W.3d at 316–17 & n.51; *Holley*, 544 S.W.2d at 371–72. We hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72; *J.W.*, 645 S.W.3d at 741. Accordingly, we overrule Appellant's sole issue.

### *This Court's Ruling*

We affirm the order of the trial court.

W. BRUCE WILLIAMS
JUSTICE

November 21, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

13